UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          Case No. 8:08-cr-288-T-23MAP
                                                                  8:13-cv-5-T-23MAP

MIGUEL A.C. VELASQUEZ

                                        /

**O R D E R**

Velasquez's motion to vacate under 28 U.S.C. § 2255 (Doc. 1) challenges the validity of his conviction for conspiracy to possess with intent to distribute cocaine while on board a vessel, for which offense he was sentenced to 168 months. The motion is time-barred and lacks merit.

Rule 4, Rules Governing Section 2255 Cases, requires both a preliminary review of the motion to vacate and a summary dismissal "[i]f it plainly appears from the face of the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief . . . ." *Accord Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)[1] (The summary dismissal of a Section 2255 motion was proper "[b]ecause in this case the record, uncontradicted by [defendant], shows that he is not entitled to relief."); *Hart v. United States*, 565 F.2d 360, 361 (5th Cir. 1978)

---

[1] Unless later superseded by Eleventh Circuit precedent, a Fifth Circuit decision issued before October 1, 1981, binds this court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*).

("Rule 4(b) of § 2255 allows the district court to summarily dismiss the motion and notify the movant if 'it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief.'").

The Anti-Terrorism and Effective Death Penalty Act creates a limitation for a motion to vacate. "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of . . . the date on which the judgment of conviction becomes final . . . ." 28 U.S.C. § 2255(f)(1). Because his conviction was final in December, 2008, Velasquez's limitation expired one year later, in December, 2009. Velasquez dated his motion to vacate in December, 2012, which is three years late. Consequently, Velasquez's motion to vacate is time-barred under Section 2255(f)(1).

Velasquez asserts both actual innocence and entitlement, under *United States v. Bellaizac-Hurtado*, 700 F.3d 1245 (11th Cir. 2012), to a delayed start of the limitation under Section 2255(f)(3), which provides for beginning the limitation on "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . ." Although Velasquez filed his motion to vacate within one year of *Hurtado*, that decision affords Velasquez's no relief.

First, a delayed start of the limitation under Section 2255(f)(3) requires the recognition of a new right by the Supreme Court. *Hurtado* is a circuit court decision,

- 2 -

not a Supreme Court decision. As a consequence, Velasquez cannot benefit from *Hurtado* under Section 2255(f)(3)'s provision for a delayed start of the limitation.[2]

Second, *Hurtado* is factually distinguishable. Velasquez was convicted of violating the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §70503(a), *et. seq.*, which is based on the constitutional authority granted to Congress "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations." U.S. Const., Art. I, § 8, cl. 10. *Hurtado*, 700 F.3d at 1248-49, explains the breadth of jurisdiction under the MDLEA.

> The Supreme Court has interpreted that Clause to contain three distinct grants of power: the power to define and punish piracies, the power to define and punish felonies committed on the high seas, and the power to define and punish offenses against the law of nations. *See United States v. Smith*, 18 U.S. (5 Wheat.) 153, 158–59, 5 L. Ed. 57 (1820). The first two grants of power are not implicated here: piracy is, by definition, robbery on the high seas, *United States v. Furlong*, 18 U.S. (5 Wheat.) 184, 198, 5 L. Ed. 64 (1820), and the Felonies Clause is textually limited to conduct on the high seas, *see* U.S. Const., Art. I, § 8, cl. 10. The United States relies instead on the third grant—the Offences Clause—as the source of congressional power to proscribe the defendants' drug trafficking in the territorial waters of Panama. The question whether Congress has the power under the Offences Clause to proscribe drug trafficking in the territorial waters of another nation is an issue of first impression in our Court.

*Hurtado* rejected the argument that the "Offences Clause" supports the MDLEA. "Because drug trafficking is not a violation of customary international law,

---

[2] Although it will control future cases, the retroactive application of *Hurtado* to a final case is controlled by Section 2255(f)(3)'s requirement that the new right is one initially recognized by the Supreme Court.

we hold that Congress exceeded its power, under the Offences Clause, when it proscribed the defendants' conduct in the territorial waters of Panama." 700 F.3d at 1258. *Hurtado* is inapplicable to Velasquez because he was not in a country's territorial water when his vessel was seized.

In his plea agreement (Doc. 56 in 8:08-cr-288-T-23MAP), Velasquez admits that his vessel was in international water when he was taken into custody.

> On June 25, 2008, United States Coast Guard (USCG) Cutter Tahoma spotted a Honduran fishing vessel, the MISS DAYANNA, operating in international waters of the Caribbean Sea. The vessel was located at 15.38 degrees North latitude, by 078.49 degrees West longitude. The USCGC Tahoma requested and received permission from the Government of Honduras to conduct a right of boarding. Boarding Team members from the USCGC Tahoma subsequently boarded the MISS DAYANNA and detained the defendant, who identified himself as the captain, and his six codefendants. Said Boarding Team members conducted a search of the vessel and on June 27, 2008, at approximately 2:57pm (EST), located a hidden compartment on the MISS DAYANNA in the forward fuel tank. A subsequent search of this hidden compartment yielded the discovery of 181 bales of contraband weighing approximately nine thousand eight hundred and twenty-two pounds (9,822 lbs). Onsite field drug test was performed by USCG Boarding Team members and yielded positive results for cocaine alkaloids.
>
> The defendants were subsequently placed into custody by Boarding Team members. On June 27, 2008, the United States Coast Guard requested the Government of Honduras waive its right to exercise jurisdiction over the vessel, cargo and crew of the F/V MISS DAYANNA and authorize the enforcement of U.S. law by the United States. On July 3, 2008, the Government of Honduras waived its right to exercise jurisdiction and consented to the enforcement of U.S. law. The defendants were brought to the United States with the Middle District of Florida being the point of entry.

Velasquez's reported location (15.38° N. latitude by 0.78.49° W. longitude) places the vessel near the middle of the Caribbean Sea between Jamaica and Columbia, unquestionably in international water.[3]  Because Velasquez was not within a country's territorial water, *Hurtado* is inapplicable and Velasquez is not entitled to a delayed start of the limitation.

Third, Velasquez is not actually innocent of conspiracy to possess with the intent to distribute cocaine while on board a vessel, the offense to which he pleaded guilty.  Although actual innocence, if proven, permits the review of time-barred federal claims, Velasquez is not actually innocent because "actual innocence means factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Factually, Velasquez conspired to possess with the intent to distribute cocaine while on board a vessel without regard to whether the vessel was in territorial or international water.  *Hurtado*'s holding that a district court lacks subject matter jurisdiction is limited to acts that occur within territorial water.  *Hurtado* is inapplicable to Velasquez because his vessel was seized in international water.

---

[3] Velasquez alleges that the vessel was in the territorial water of Honduras.  Apparently the basis for this allegation is that the coast guard requested permission from the Honduran government to board the vessel and that the Honduran government waived its right to exercise jurisdiction over both the vessel and its cargo.  The Honduran government was involved because the vessel was registered as a Honduran fishing vessel, not because the vessel was within the territorial water of Honduras.

Accordingly, the motion to vacate under 28 U.S.C. § 2255 (Doc. 1) is **DISMISSED** as time-barred and not entitled to a delayed start of the limitation under *Hurtado*. The clerk shall close this case.

## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Velasquez is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Velasquez must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because the petition is clearly time-barred and not entitled to a delayed start of the limitation, Velasquez cannot meet *Slack*'s prejudice requirement. 529 U.S. at 484. Finally, Velasquez is not entitled to appeal *in forma pauperis* because he is not entitled to a COA.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Velasquez must pay the full $455 appellate

filing fee without installments unless the circuit court allows Velasquez to proceed *in forma pauperis*.

ORDERED in Tampa, Florida, on January 17, 2013.

*[signature]*

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE